EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>César Vega Feliciano<br><br>Recurrido | Certiorari<br><br>2020 TSPR 07<br><br>203 DPR \_\_\_\_ |

Número del Caso:  CC-2017-845


Fecha: 29 de enero de 2020


Tribunal de Apelaciones:

      Región Judicial de San Juan-Caguas Panel III


Oficina del Procurador General:

    Lcdo. Luis R. Román Negrón
    Procurador General

    Lcda. Celia M. Molano Flores
    Procuradora General Auxiliar


Abogado de la parte Recurrida:

    Por derecho propio


Materia:  Sentencia del Tribunal con Voto de Conformidad


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                    CC-2017-0845        *Certiorari*

César Vega Feliciano

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2020.

Expedido el recurso de *certiorari,* y con el beneficio de la comparecencia de ambas partes, se dicta *Sentencia* confirmando el dictamen emitido en el presente caso por el Tribunal de Apelaciones el pasado 30 de junio de 2017.

Así lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió un Voto de Conformidad al que se une la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Feliberti Cintrón y Estrella Martínez. El Juez Asociado señor Kolthoff Caraballo no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

CC-2017-0845    *Certiorari*

César Vega Feliciano

    Recurrido

Voto de Conformidad emitido por el Juez Asociado señor COLÓN PÉREZ al que se une la Jueza Presidenta ORONOZ RODRÍGUEZ y los Jueces Asociados señores FELIBERTI CINTRÓN y ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico a 29 de enero de 2020.

Estamos conformes con el curso de acción seguido por una mayoría de este Tribunal en el presente caso. Un caso donde nos correspondía determinar si el Tribunal de Apelaciones actuó correctamente al aplicar el principio de favorabilidad en lo relacionado a determinadas violaciones a la *Ley para la protección de la propiedad vehicular, infra,* según enmendada en el año 2004, y contempladas en cierta *Sentencia* dictada por el Tribunal de Primera Instancia, por hechos ocurridos mientras estaba vigente el Código Penal de 1974.

Luego de un detenido y cuidadoso análisis de los hechos ante nuestra consideración, así como del derecho aplicable, al igual que lo hiciera la mayoría de los miembros de este foro, contestamos dicha interrogante en la afirmativa. Veamos.

I.

Los hechos medulares que dieron margen al presente litigio no están en controversia. Por hechos ocurridos el 1 de octubre de 1997, se presentaron sendas denuncias en contra del señor César Vega Feliciano (en adelante, "señor Vega Feliciano") cuando éste tenía quince (15) años de edad. En específico, se le imputó que, actuando en común concierto y acuerdo con el señor Ángel L. Sánchez, asesinó a puñaladas a dos (2) personas en su hogar -- al cual penetraron con intención de robar -- se apropiaron de ochocientos dólares ($800) y luego se marcharon en el vehículo de las víctimas. Por los hechos anteriores, el Tribunal de Primera Instancia determinó causa probable para arresto.

Luego de celebrada la correspondiente vista preliminar y encontrada causa probable para acusar, el Ministerio Público presentó acusación contra el señor Vega Feliciano por infracción a los Arts. 83 (asesinato en primer grado) y 166 (apropiación ilegal agravada) del Código Penal de 1974, *infra,* así como por infracción al Art. 4 (uso y portación de armas blancas) de la Ley Núm. 17 de 19 de enero de 1951, *Ley de Armas de Puerto Rico*, 25 LPRA ant. sec. 411 *et seq.,* e infracción al Art. 18 (apropiación ilegal de un

vehículo de motor) de la Ley Núm. 8 de 1987, conocida como la *Ley para la protección de la propiedad vehicular, infra.*

Posteriormente, el 21 de enero de 1998 el señor Vega Feliciano hizo alegación de culpabilidad por los delitos imputados. Consecuentemente, el 24 de marzo de ese mismo año el Tribunal de Primera Instancia le sentenció a noventa y nueve (99) años de reclusión en cada uno de los dos (2) cargos por el delito de asesinato en primer grado, a cumplirse consecutivamente. Asimismo, se impuso al señor Vega Feliciano una pena de dos (2) años de reclusión por cada uno de los dos (2) cargos por infracción a la Ley de Armas de Puerto Rico, *supra*; doce (12) años de reclusión por el delito de apropiación ilegal agravada; y doce (12) años de reclusión por el delito de apropiación ilegal de un vehículo, pena máxima que contemplaba la *Ley para la protección de la propiedad vehicular, infra.*

Así las cosas -- y mientras el señor Vega Feliciano cumplía con la pena -- se aprobó la Ley Núm. 282-2004, *infra,* para enmendar la *Ley para la protección de la propiedad vehicular, infra,* a los fines de atemperarla al nuevo esquema de penas contemplado en el Código Penal de 2004. Mediante dicha enmienda se eliminó la pena específica para el delito de apropiación ilegal de un vehículo y se estableció que dicha conducta criminal se consideraría una grave de tercer grado. No obstante, en la ley especial no se especificó qué constituía el delito grave de tercer grado. Además, mediante la Ley Núm. 246-2014, *infra,* se

modificaron varias disposiciones del Código Penal de 2012, *infra,* entre ellas las penas para los delitos de apropiación ilegal y apropiación ilegal agravada y aquellas sobre el concurso de delitos.[1]

Enterado de lo anterior, y luego de presentar varios recursos y mociones, el 23 de enero de 2017 el señor Vega Feliciano presentó ante el foro primario una moción en la que solicitó que se enmendara la *Sentencia* dictada en su contra, ello al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II. En esencia, alegó que procedía la aplicación del principio de favorabilidad para corregir la *Sentencia* que le fue impuesta en cuanto al delito de apropiación ilegal agravada y el delito de apropiación

---

[1] El Artículo 71 del Código Penal de 2012 preceptúa lo relativo al concurso de delitos:

> (a) Concurso ideal y medial de delitos - Cuando sean aplicables a un hecho dos o más disposiciones penales, cada una de las cuales valore aspectos diferentes del hecho, o cuando uno de éstos es medio necesario para realizar el otro, se condenará por todos los delitos concurrentes, pero sólo se impondrá la pena del delito más grave.

> (b) Concurso real de delitos - Cuando alguien haya realizado varios delitos que sean juzgados simultáneamente, cada uno de los cuales conlleva su propia pena, se le sentenciará a una pena agregada, que se determinará como sigue:

>> (1) Cuando uno de los delitos conlleve pena de reclusión de noventa y nueve (99) años, ésta absorberá las demás.

>> (2) Cuando más de uno de los delitos conlleve reclusión por noventa y nueve (99) años, se impondrá además una pena agregada del veinte (20) por ciento por cada víctima.

>> (3) En los demás casos, se impondrá una pena para cada delito y se sumarán, no pudiendo exceder la pena agregada del veinte (20) por ciento de la pena para el delito más grave. 33 LPRA sec. 5104

ilegal de un vehículo de motor. Lo anterior, en virtud de las disposiciones de la Ley Núm. 246-2014, *infra,* así como las enmiendas realizadas a la *Ley para la protección de la propiedad vehicular*, *infra*, mediante la Ley Núm. 282-2004, *infra*. No obstante, mediante *Resolución* de 30 de marzo de 2017 el Tribunal de Primera Instancia denegó la moción presentada.

Inconforme con el proceder del foro primario, el 18 de mayo de 2017 el señor Vega Feliciano acudió -- por derecho propio y en forma *pauperis* -- al Tribunal de Apelaciones mediante petición de *certiorari.* En dicha petición, señaló que el Tribunal de Primera Instancia erró al no adjudicar su planteamiento en cuanto a la aplicación de la Ley Núm. 246-2014, *infra,* respecto al delito de apropiación ilegal agravada, así como a los fines de que la pena se cumpla de manera concurrente y no consecutiva. **Además, sostuvo que dicho foro incidió al no aplicar el principio de favorabilidad cuando una ley especial posterior que no contiene cláusula de reserva -- como lo es la Ley Núm. 282-2004, *infra* -- dispone una pena más benigna.**

Evaluado el referido recurso, el 30 de junio de 2017 el foro apelativo intermedio emitió una *Sentencia* mediante la cual revocó en parte la determinación del Tribunal de Primera Instancia. El Tribunal de Apelaciones razonó que, aunque la Ley Núm. 246-2014, *infra,* enmendó el Código Penal de 2012 sustancialmente, no derogó la cláusula de reserva de dicho Código. Por consiguiente, concluyó que la referida

cláusula prohibía la aplicación de la Ley Núm. 246-2014, *infra,* a conducta realizada bajo el Código Penal de 1974, por lo que no procedía la disminución de la pena en cuanto al delito de apropiación ilegal agravada como tampoco aplicaban las disposiciones relativas al concurso de delitos.

**Ahora bien, en cuanto al delito de apropiación ilegal de un vehículo, el tribunal *a quo* resolvió que le aplicaban las disposiciones más benignas contempladas en la Ley Núm. 282-2004, *infra*. Para ello, concluyó que dicha ley especial no contenía una cláusula de reserva que impidiera su aplicación retroactiva y, consecuentemente, procedía modificar la sentencia conforme a lo dispuesto por el principio de favorabilidad.**

Insatisfecho con la determinación del foro apelativo intermedio, el Procurador General comparece ante nos mediante petición de *certiorari.* En la misma, éste sostiene que el Tribunal de Apelaciones hizo caso omiso a la cláusula de reserva establecida en el Código Penal de 2004. Por tanto, señala que dicho foro erró al aplicar el principio de favorabilidad y, en consecuencia, la definición de delito grave de tercer grado incluida en el referido Código a la sentencia dictada en contra del señor Vega Feliciano por infracción a la *Ley para la protección de la propiedad vehicular*, *infra*, por hechos cometidos mientras estaba vigente el Código Penal de 1974.

## II.

**A.   El principio de favorabilidad y las cláusulas de reserva**

Como es sabido, en nuestro ordenamiento jurídico rige el postulado básico de que la ley aplicable a unos hechos delictivos es aquella vigente al momento de cometerse el delito. *Pueblo v. González Ramos,* 165 DPR 675, 684 (2005); *Pueblo v. Rexach Benítez,* 130 DPR 273, 301 (1992). No obstante, en armonía con la doctrina continental europea, en nuestra jurisdicción hemos adoptado el principio de favorabilidad, en virtud del cual procede la aplicación retroactiva de una ley penal cuando la misma favorece a la persona imputada de delito. *Pueblo v. Torres Cruz,* 194 DPR 53, 59 (2015); *Pueblo v. González Ramos*, *supra.* Véase, L. Rivera Román, *El nuevo Código Penal: su vigencia y el debate entre la aplicación de la ley más benigna y las cláusulas de reserva,* 40 Rev. Jur. UIPR 41 (2005).

Según señala el comentarista Luis E. Chiesa Aponte en su obra *Derecho Penal Sustantivo*, citando al jurista Eugenio Raúl Zaffaroni, este principio tiene como objetivo evitar la aplicación arbitraria e irracional de la ley penal debido a que "el principio republicano de gobierno exige la racionalidad de la acción del estado y ésta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se le trate más rigurosamente". L. E. Chiesa Aponte,

*Derecho Penal Sustantivo*, 2da ed., San Juan, Pubs. JTS, 2013, pág. 59.

Así las cosas, y desde hace unos años atrás, el principio de favorabilidad al que hemos hecho referencia, en Puerto Rico quedó consagrado en el Art. 4 del Código Penal de 1974 el cual disponía que:

> Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
>
> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
>
> **Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.**
>
> En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho. (Énfasis nuestro). 33 LPRA ant. sec. 3004.

Posteriormente, entiéndase el 18 de junio de 2004, el Código Penal de 1974 fue derogado y sustituido por el Código Penal de 2004, 33 LPRA ant. sec. 4629 *et seq.,* cuyo Art. 9 introdujo una disposición de mayor alcance en cuanto al principio de favorabilidad antes expuesto. La misma rezaba de la siguiente manera:

> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la

sentencia, se aplicará siempre la ley más benigna.

**(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.**

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada de estar recluida o en restricción de libertad. 33 LPRA ant. sec. 4637.

Actualmente, este principio se encuentra regulado por el Art. 4 del Código Penal de 2012, el cual establece que:

La ley penal aplicable es la vigente al momento de la comisión de los hechos.

La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:

(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.

**(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.**

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y

> la persona liberada, de estar recluida o en restricción de libertad.

> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. (Énfasis suplido) 33 LPRA sec. 5004.

Precisa aclarar aquí que, a diferencia de la prohibición constitucional de leyes *ex post facto*,[2] el principio de favorabilidad corresponde a un acto de gracia legislativa cuyo origen es puramente estatutario. *Pueblo v. Torres* Cruz, *supra,* pág. 60; *Pueblo v. González, supra,* pág. 686. Por consiguiente, la aplicación retroactiva de las leyes penales que favorezcan al acusado recae totalmente en la prerrogativa del legislador. *Pueblo v. Hernández García,* 186 DPR 656, 673 (2012); *Pueblo v. González Ramos, supra.*

Conforme a ello, el legislador tiene la potestad de establecer excepciones a dicho principio, ordenando así la aplicación prospectiva de la ley vigente al momento de la comisión del hecho punible, aunque ello resulte más desfavorable para el acusado que la ley vigente al momento de la condena. *Íd.* Véase, además, A. Bascuñán Rodríguez, *La aplicación de la ley penal más favorable,* 69 Rev. Jur. UPR 29, 42 (2000).

---

[2] La Sec. 12 del Art. II de la Constitución del Estado Libre Asociado dispone, en lo pertinente que "no se aprobarán leyes ex post facto ni proyectos para condenar sin celebración de juicio". Art. II, Sec. II, Const. ELA, LPRA Tomo I.

En esa dirección, en nuestro ordenamiento jurídico se han adoptado las cláusulas de reserva, en virtud de las cuales se asegura la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el periodo en que éstas estuvieron vigentes, independientemente de si éstas resultan más favorables o desfavorables para el acusado.[3] *Pueblo v. González, supra,* pág. 695; L. Rivera Román, *supra.* Es decir, las cláusulas de reserva operan como una limitación al principio de favorabilidad. *Pueblo v. Torres Cruz, supra*, pág. 61; *Pueblo v. González Ramos, supra,* págs. 698-99.

A tenor con lo anterior, el Código Penal de 1974, *supra*, incorporó las referidas cláusulas en los Arts. 281 y 282. En particular, el Art. 282 dispuso que las disposiciones del Art. 4 de dicho Código -- el cual establecía el principio de favorabilidad -- se aplicarían solamente con carácter prospectivo a partir de la fecha de su vigencia. 33 LPRA ant. sec. 4626. **Cónsono con ello, en *Pueblo v. Moreno Morales,* 132 DPR 261 (1992), reconocimos la validez de las cláusulas de reserva**

---

[3] Las cláusulas de reserva comenzaron a utilizarse en el derecho penal estadounidense en el siglo XIX con el fin de neutralizar la doctrina de supresión y de esa manera garantizar la continuidad en el procesamiento criminal. *Pueblo v. Torres Cruz, supra; Pueblo v. González Ramos, supra,* pág. 687. Bascuñán Rodríguez, *supra,* pág. 55.

Conforme a la doctrina de la supresión, la derogación de una ley penal resultaba en la supresión de todos los procedimientos que aún no fuesen finales. Se interpretaba que, cuando el legislador aprobaba un estatuto que derogaba o modificaba un estatuto penal anterior, tenía la intención de impedir la aplicación judicial del estatuto derogado modificado. Véase, *Pueblo v. González, supra,* págs. 686-87.

**contenidas en leyes especiales, en cuanto a su aplicación retroactiva.**

Años más tarde, a través de la aprobación de la Ley Núm. 149-2004, se derogó el Código Penal de 1974 y se adoptó el Código Penal de 2004, *supra.* En aras de evitar la aplicación retroactiva de sus disposiciones, el Art. 308 del Código Penal de 2004 dispuso:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
>
> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. 33 LPRA ant. sec. 4935

Sobre este particular, la profesora Dora Nevares-Muñiz explica que dicha cláusula tuvo el efecto de permitir la "ultra actividad" de la ley derogada por hechos realizados durante su vigencia, excepto cuando se tratara de la supresión de un delito. El concepto "ultra actividad" se refiere a la aplicación de una ley penal a los hechos cometidos durante su vigencia aun cuando dicha ley haya sido enmendada o derogada. *Véase,* D. Nevares Muñiz, *Nuevo Código Penal de Puerto Rico,* comentado, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2004-2005, págs. 9-10. Véase, además, *Pueblo v. González, supra,* pág. 705.

En *Pueblo v. González, supra*, evaluando el alcance de la referida disposición legal, establecimos que al momento de analizar si una nueva ley penal debe aplicarse retroactivamente, debe compararse la ley vigente al momento de cometerse el delito con la nueva ley. Allí, sentenciamos que si de esa comparación surge que la ley posterior resulta más beneficiosa, ésta se aplicará retroactivamente excepto que una cláusula de reserva lo prohíba.

Asimismo, el Código Penal de 2012, el cual está vigente actualmente, adoptó en su Art. 303 una cláusula de reserva en extremo similar a aquella contemplada por el Código anterior. El referido artículo dispone:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.

> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. Sólo se entenderá que un delito ha sido suprimido cuando la conducta imputada no constituiría delito alguno bajo este Código. El hecho de que se le cambie el nombre o denominación a un delito, o que se modifique la tipificación del mismo no constituirá la supresión de tal delito. 33 LPRA sec. 5412.

## B. Principio de especialidad

Por otro lado, para la correcta disposición de la controversia que nos ocupa, es necesario también pormenorizar en todo lo relacionado al principio de

especialidad; principio que atiende aquellos escenarios donde existe más de un precepto penal que concurre en su aplicación a un hecho delictivo por lo que resulta necesario determinar cuál es la disposición penal aplicable. *Pueblo v. Hernández Villanueva*, 179 DPR 872, 911 (2010); *Pueblo v. Ramos Rivas*, 171 DPR 826, 835-36 (2007).

Al respecto, en reiteradas ocasiones hemos señalado que, para que pueda ser de aplicación el principio de especialidad es necesaria la existencia de un conflicto que hace incompatible la aplicación de dos o más disposiciones penales a la misma vez. *Pueblo v. Cordero Meléndez,* 193 DPR 701, 724 (2015); *Pueblo v. Hernández Villanueva*, *supra,* pág. 892; *Pueblo v. Ramos Rivas*, *supra,* págs. 836-37.

En esa dirección, en *Pueblo v. Cordero Meléndez, supra,* aclaramos que al hacer referencia a que ambos estatutos deben ser mutuamente excluyentes, no nos referimos al contenido de los delitos en sí, sino a que ambas disposiciones no pueden ser aplicadas simultáneamente. Ejemplo de lo anterior sería -- tal como sucede en el presente caso -- el delito de apropiación ilegal que se encuentra regulado por el Código Penal y el delito de apropiación ilegal de un vehículo estatuido en la *Ley para la protección de la propiedad vehicular*, *infra.*

Trabado ese conflicto, y de conformidad con la máxima *lex specialis derogat legi generali*, se aplicará la ley

especial. *Pueblo v. Cordero Meléndez*, *supra*, pág. 738; *Pueblo v. Ramos Rivas*, *supra*, pág. 837; *PaineWebber, Inc. v. First Boston, Inc.,* 136 DPR 54, 544-45 (1994). Conforme a lo anterior, el principio de especialidad descarta la discreción del Estado pues hace mandatoria la aplicación del estatuto especial sobre el general. *Pueblo v. Cordero Meléndez, supra*, pág. 709.

Ahora bien, y por tratarse de un caso con controversias en extremo similares a las que nos ocupan, conviene discutir aquí lo resuelto por esta Curia en *López Borges v. Administración de Corrección,* 185 DPR 603 (2012). En el referido caso, el señor Jacinto López Borges (en adelante, "señor López Borges") fue hallado culpable de violar el Art. 173 del Código Penal de 1974 (robo), 33 LPRA ant. sec. 4279, y el Art. 4 de la Ley de Armas de Puerto Rico de 1951, *supra*, por lo que el 4 de junio de 1991, el Tribunal de Primera Instancia lo declaró reincidente habitual y, como tal, lo sentenció a la separación permanente de la sociedad mediante reclusión perpetua en una institución de custodia máxima. Ello, obedeciendo al mandato establecido en el inciso (c) del Art. 62 del Código Penal de 1974, 33 LPRA ant. sec. 4637.[4]

---

[4] El referido artículo expresaba:

En caso de reincidencia habitual el convicto será declarado por el tribunal delincuente habitual y será sentenciado a separación permanente de la sociedad mediante reclusión perpetua. No obstante lo dispuesto en la Ley Núm. 116 de 22 de julio de 1974, según enmendada, en cuanto a la facultad de la Administración de Corrección para determinar las instituciones en que habrá de ser ingresada

Mientras el señor López Borges cumplía con la sentencia, se derogó el Código Penal de 1974, *supra,* y entró en vigor el Código Penal de 2004, *supra.* En este último, la figura del delincuente habitual quedó consagrada en su Art. 81, el cual dispuso que la pena aplicable a dicha reincidencia habitual sería de noventa y nueve (99) años. 33 LPRA ant. sec. 4709. Es decir, ya no se contemplaba que el convicto sería sentenciado a separación permanente y que cumpliría todo el término de reclusión en una institución especializada de máxima custodia. Además, el 16 de septiembre de 2004 se aprobó la Ley Núm. 377-2004, conocida como *Ley de mandato constitucional de rehabilitación,* 4 LPRA sec. 1611, la cual dispuso, en esencia, que se realizaría la revisión continua de la clasificación de custodia de toda la población correccional de acuerdo al cumplimiento del confinado con su proceso de rehabilitación.

Así pues, la controversia ante nuestra consideración era determinar si el señor López Borges podía beneficiarse de las disposiciones de esa ley a pesar de haber sido sentenciado bajo el Código Penal de 1974. La Administración de Corrección sostenía que, por virtud de

o trasladada la clientela del sistema correccional, el convicto que sea sentenciado a separación permanente cumplirá todo el término de reclusión en una institución especializada de máxima custodia y la Administración de Corrección proveerá a este tipo de delincuente todos los servicios y programas en la propia institución, incluyendo aquellos que propendan a su rehabilitación. 33 LPRA ant. sec. 3302.

la cláusula de reserva contenida en el Art. 308 del Código Penal de 2004, *supra*, dicha entidad estaba obligada a mantener bajo custodia máxima a toda persona sentenciada como reincidente habitual al amparo del Código Penal de 1974. Este Tribunal, por voz de la entonces Jueza Asociada señora Liana Fiol Matta, resolvió que la ley especial posterior, entiéndase la *Ley de mandato constitucional de rehabilitación*, *supra*, permitió cruzar la barrera del Art. 62 del Código Penal de 1974, *supra,* y clasificar a todo confinado -- incluyendo a quienes caían bajo la categoría de reincidentes habituales -- según les correspondía de acuerdo con el cumplimiento de su proceso de rehabilitación, contemplado en la nueva ley.

No empece lo anterior, las expresiones de la Juez Asociada Rodríguez Rodríguez en su opinión de conformidad resultan más que ilustrativas. La Juez expresó que, tras la entrada en vigor del Código de 2004, *supra,* la Administración de Corrección ya no estaba obligada a mantener en una institución especializada de máxima custodia -- durante todo el término de reclusión -- al convicto sentenciado a separación permanente. A pesar de dicho cambio en el ordenamiento, la Juez reconoció que en virtud de la cláusula de reserva del Art. 308 del Código de 2004, aquella conducta realizada durante la vigencia del Código Penal de 1974, *supra*, se regiría por las disposiciones de dicho cuerpo legal o por las leyes vigentes al momento del hecho.

No obstante, entendió que en ese caso, la *Ley de mandato constitucional de rehabilitación*, *supra,* dejó sin efecto la prohibición establecida en el Art. 62 del Código Penal de 1974, *supra.* **Para llegar a ello, razonó que la referida ley era una especial de carácter penal con implicaciones procesales y sustantivas de índole constitucional a la cual no le aplicaba la cláusula de reserva del Art. 308, ya que la *Ley de mandato constitucional de rehabilitación, supra,* no era una mera disposición del Código de 2004.** <u>**Consecuentemente, concluyó que procedía la aplicación retroactiva de la ley por tratarse de una ley penal especial posterior al Código de 1974 que, además de haber sido aprobada luego del Código Penal de 2004, no fue contravenida por la entrada en vigor de este cuerpo legal de carácter general**</u>.

## C. Ley para la protección de la propiedad vehicular

Por último, conviene señalar que, con el propósito de habilitar un mecanismo para desalentar las prácticas ilícitas de tráfico, venta, distribución y exportación de piezas y vehículos de motor hurtados, se aprobó la Ley Núm. 8 de 5 de agosto de 1987, conocida como *Ley para la protección de la propiedad vehicular*, 9 LPRA sec. 3201 *et seq.* En específico, en el Art. 18 de la referida ley quedó estatuido el delito de apropiación ilegal de vehículo de la siguiente manera:

Toda persona que ilegalmente se apropiare sin violencia ni intimidación de algún vehículo de motor, perteneciente a otra persona, será sancionada con pena de reclusión por un término fijo de diez (10) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de doce (12) años, de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida.

Se entenderá que la apropiación es ilegal en cualquiera de las siguientes circunstancias, cuando la persona:

(1) Se ha apropiado o apoderado del vehículo sin consentimiento de su dueño.
....

9 LPRA sec. 3217.

Más adelante, el 15 de septiembre de 2004 para ser específicos, se enmendó dicha ley para atemperarla al nuevo sistema de clasificación de delitos por grados e intervalos de penas establecidos en el Código Penal de 2004, ello mediante la Ley Núm. 282-2004, 9 LPRA sec. 3214 *et seq.* En específico, la Exposición de Motivos de la Ley Núm. 282-2004, *supra*, indicó que resultaba imperativo ajustar todo el ordenamiento penal de forma tal que al introducirse el nuevo Código Penal existiera uniformidad en dicho ordenamiento.

Así, se catalogó como delito grave de tercer grado la infracción al Art. 18 de la *Ley para la protección de la propiedad vehicular*, cuya pena -- conforme al Código Penal -- fluctuaba entre tres (3) años y un (1) día hasta ocho (8) años de reclusión.[5] **Es menester resaltar que la**

---

[5] El Art. 16 del Código Penal de 2004 expresaba lo siguiente:

**Ley Núm. 282-2004, *supra*, no incluyó una cláusula de reserva que impidiera su aplicación retroactiva.**

Posteriormente, el Código Penal de 2012, *supra,* eliminó la clasificación de los delitos en grados. Sin embargo, en cuanto a aquellos delitos tipificados en leyes especiales utilizando el sistema de clasificación de grados del Código Penal de 2004, la cláusula de transición para la fijación de penas -- consagrada en el Art. 307 -- establece que el delito grave de tercer grado conllevará una pena de reclusión, restricción terapéutica, restricción domiciliaria, servicios comunitarios, o combinación de estas penas, por un término fijo de ocho (8) años. 33 LPRA sec. 5415.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de la controversia ante nuestra consideración.

---

Los delitos se clasifican en menos graves y graves.

Es delito menos grave todo aquel que conlleva multa individualizada de hasta cinco mil (5,000) dólares o reclusión hasta noventa (90) días. Delito grave, en todas las clasificaciones que se especifican más adelante, comprende todos los demás delitos.

Es delito grave aquel que conlleva una pena de reclusión mayor de seis (6) meses y que según la pena correspondiente, se clasifica en cuatro grados, como sigue:

....

(c) Grave de tercer grado, cuya pena de reclusión fluctúa entre tres (3) años un (1) día y ocho (8) años.

....

33 LPRA sec. 4644.

III.

Como mencionamos anteriormente, en el presente caso el Procurador General sostiene que el Tribunal de Apelaciones erró al aplicar las disposiciones del Código Penal de 2004 -- en virtud del principio de favorabilidad -- a la sentencia dictada en contra del señor Vega Feliciano por infracción al Art. 18 de la *Ley para la protección de la propiedad vehicular*, *supra*, por hechos cometidos durante la vigencia del Código Penal de 1974. Éste sostiene que el foro apelativo intermedio hizo caso omiso a la cláusula de reserva del Art. 308 del Código Penal de 2004 que prohíbe la aplicación retroactiva de sus disposiciones. No le asiste la razón. Veamos.

De entrada, es menester señalar que el caso ante nuestra consideración no versa sobre la aplicación del principio de favorabilidad a delitos que se encontraban tipificados en el Código Penal de 1974, *supra*. **Se trata aquí de evaluar el referido principio en el contexto del delito de apropiación ilegal de un vehículo de motor el cual el legislador tipificó en una ley especial, entiéndase la *Ley para la protección de la propiedad vehicular*, supra; que, con posterioridad tanto al Código Penal de 1974 como al Código Penal de 2004, es enmendada mediante la Ley Núm. 282-2004, de la cual surge diáfanamente que el legislador no incluyó una cláusula de**

**reserva que prohibiera la aplicación retroactiva de sus disposiciones.**

Recordemos que, de conformidad con la normativa antes expuesta, para evitar la aplicación del principio de favorabilidad -- y por tanto las disposiciones más benignas aprobadas con posterioridad a la comisión de los hechos -- es requisito *sine qua non* que el legislador, conforme a su prerrogativa de establecer excepciones a dicho principio, incluyese una cláusula de reserva en la ley especial. En lo que se refiere al presente caso, la Asamblea Legislativa tuvo la oportunidad de prohibir la aplicación retroactiva de la *Ley para la protección de la propiedad vehicular, supra,* cuando la enmendó en el año 2004, pero esto no ocurrió de esa forma. Por consiguiente, es forzoso concluir que dicha rama constitucional de gobierno mantuvo su intención de que las disposiciones adoptadas mediante la referida ley apliquen a hechos ocurridos con anterioridad a su vigencia, si éstas favorecen al acusado.

Rechazar la aplicación del principio de favorabilidad en una situación tan particular como la que está ante nuestra consideración -- entiéndase, cuando se trata de una ley especial posterior sin cláusula de reserva -- tendría el efecto de limitar dicho principio a tal extremo que lo haría casi inoperante. Tenemos que evitar a toda costa que la norma se convierta en la excepción.

Siendo ello así, concluimos que, conforme al principio de favorabilidad que impera en nuestro ordenamiento jurídico, procede la aplicación de las disposiciones más benignas a la *Sentencia* dictada en contra del señor Vega Feliciano en cuanto al delito de apropiación ilegal de un vehículo. No se cometió, pues, el error señalado.

IV.

Es pues, por los fundamentos antes expuestos, que estamos conformes con lo decidido por este Tribunal en el día de hoy.

Ángel Colón Pérez
Juez Asociado